UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
WILMINGTON DIVISION

IN RE:

**GEORGE WILLIAM TAYLOR, JR.,**

     **DEBTOR.**                                        Case No. 05-01763-8-JRL

## ORDER

This matter comes before the court on Carlin Equities Corporation and Generic Trading of Philadelphia, L.L.C. ("Generic")'s objection to confirmation and motion to dismiss. A hearing was held on July 20, 2005 in Wilmington, North Carolina.

The debtor, George William Taylor, Jr., filed a voluntary Chapter 13 petition on March 4, 2005. With the filing of his petition, the debtor filed his statement of financial affairs, schedules, and a Chapter 13 plan which proposed to make 48 monthly payments to the trustee in the amount of $365 each. On April 12, 2005, the Chapter 13 trustee filed a motion for confirmation of the debtor's plan, providing for aggregate payments in the amount of $17,520. The debtor's summary of schedules lists, as the combined sum of the obligations listed in his schedules and petitions, total liabilities in the amount of $276,048.86. The debtor's schedules also indicate that he is employed as a financial analyst with G.W. Taylor,[1] and receives a salary of $4,500 per month.

Generic is subject to an operating agreement dated October 9, 1997. Pursuant to the operating agreement, Generic is authorized to trade, own, buy and sell securities, as well as to execute securities transactions. Generic is authorized to admit members who are required to contribute capital to the

---

    [1]G.W. Taylor refers to George W. Taylor, Sr., the debtor's father.

Limited Liability Company simultaneously with their admission, and to execute a counterpart of the operating agreement upon their admission.  Each member of the LLC is authorized to trade Generic's capital and to make securities trades on behalf of Generic through the use of one or more separate sub-accounts of Generic's trading account which are designated for the sole use of such member. Generic's members trade Generic's capital, not their own, and the capital account of each member is to be adjusted by allocating a percentage of the profits and losses from the member's designated trading account designated for that member.  The operating agreement provides that members are not liable for the company's liabilities, and that LLC members have no recourse against other members in the event Generic is liquidated and its assets are insufficient to return to any member the positive balance in his capital account.  The operating agreement further provides that Shear Offman, Inc., the member manager of Generic, has the authority to stop trading in a member's designated trading account.  Mr. Ron Shear, the Senior Executive at Generic and a principal in Shear Offman, Inc., along with Generic's risk management group are responsible for Generic's risk management and the trading authority of its members.  Nothing in the operating agreement provides that the members of the LLC are liable over and above the amount of their capital contributions for any losses sustained by Generic.

The operating agreement was executed on behalf of ITAC Management, Inc. ("ITAC")[2] by its president, George William Taylor, Jr.  ITAC's address, telephone number, and Federal Tax Identification Number (56-2148447) appear on the Signature Page for Corporations and Other Entities along with Mr. Taylor's designated capacity as its president.  Between 1999 and 2003, Generic

---

[2] ITAC Management, Inc. was a North Carolina Corporation that was incorporated on June 24, 1999, and maintained a business office at 6210 Hackers Bend Court, Winston-Salem, NC 27103.

assigned as many as 40 designated trading accounts for the use of its member ITAC.  Each new designated trading account required the member to make a capital contribution, and these capital contributions were made by ITAC.  As a limited liability company, Generic was required by the Internal Revenue Code to issue a Form K-1 Statement annually to each of its members for tax purposes.  All K-1 Statements issued by Generic under the operating agreement were issued to ITAC.  Further, all payments by Generic of gains in the designated trading accounts were paid to ITAC as Generic's member.

Between 1999 and 2003, Generic freely allowed ITAC to use its capital to trade securities in their designated trading accounts, including account number 73EG1209.  In October 2003, Generic sustained a loss in excess of $800,000 as a result of trading activities under account number 73EG1209.  Generic's response to ITAC as a result of the loss was to recommend that ITAC continue to trade in order that it might "trade out of the loss."  This account remained open through November and December 2003, and losses continued to mount as a result of continued trading.  Finally, in January 2004, Generic's risk management group contacted ITAC and notified it that the positions in all Generic designated trading accounts used by ITAC would be liquidated.  Pursuant to their proof of claim, Generic estimates that the loss under Generic's designated trading account number 73EG1209, which was assigned to ITAC, ultimately totaled $1,060,528.88.

The Bankruptcy Code limits the amount of debt that can be discharged in Chapter 13.  11 U.S.C. § 109(e) establishes the qualifications for eligibility to seek relief as follows:

> Only an individual with regular income that owes, on the date of the filing of the petition, non-contingent, liquidated, unsecured debts of less than $307,675 and non-contingent, liquidated, secured debts of less than $922,975, or an individual with regular income

3

> and such individual's spouse, except a stockbroker or commodity broker, that owe, on the date of filing of the petition, non-contingent, liquidated, unsecured debts that aggregate less than $307,675 and non-contingent, liquidated, secured debts of less than $922,975 may be a debtor under chapter 13 of this Title.

11 U.S.C. § 109(e).

Generic asserts that the debtor owed, as of the commencement of this case on March 4, 2005, non-contingent, liquidated, unsecured debts in excess of $307,675. Consequently, Generic argues that the debtor is not eligible to serve as a Chapter 13 debtor under the provisions of 11 U.S.C. § 109(e). Generic argues that the debt is non-contingent because all of the triggering events or occurrences that the parties reasonably contemplated at the time they entered the operating agreement have occurred.

The debtor argues that for purposes of Chapter 13 eligibility under § 109(e), in order for a debt to be "liquidated," both the underlying liability on a claim, and the amount of the debt once liability is established, must be capable of being determined in a relatively simple hearing and must not require an extended evidentiary hearing or the judgment of the fact finder for determination. In re Arcella-Coffman, 318 B.R. 463, 473 (Bankr. N.D. Ind. 2004). Further, a claim is capable of ready determination and therefore liquidated "if the debtor's liability and the amount of the claim can be determined on the basis of the agreed upon facts without the need for an evidentiary hearing. Any disagreement as to liability or amount which is asserted to render a claim unliquidated must not be frivolous nor can the disagreement be solely one of law as opposed to fact." In re Hustwaite, 136 B.R. 853, 855 (Bankr. D. Or. 1991). The debtor argues that the facts demonstrate that there is a substantial, good faith, and serious dispute as to the threshold question of the debtor's liability to Generic. The debtor further submits that the court would have to both conduct substantial and

4

contested evidentiary hearings, and exercise its judgment in making findings of fact, in order to determine whether or not the debtor is liable to Generic.  Thus, the debt asserted by Generic cannot be considered to be liquidated, and the debtor's chapter 13 case should be confirmed.

Based on the record here, the motion to dismiss is denied.  There is some ambiguity in the original agreement, but the most persuasive evidence is Generic's own records of how it has treated this account.  Generic has treated this as an ITAC account no matter who traded on it.  The individual names of the traders are not reflected anywhere in Generic's accounting records as indicating that they were incurring any liabilities or accruing any gains.  The K-1 forms were issued to the corporation and not to the individuals.  Mr. Taylor's testimony is that he never put any of his own personal money in, and never took any personal money out.  Although the debtor was the president of ITAC, the operating agreement was executed by completing the corporation signature page, and not by Mr. Taylor in his individual capacity.  Because a serious and substantial question has been raised as to liability, this debt is fairly excluded from the eligibility computation.  This basis for denying confirmation is rejected.

At the hearing, an issue was also raised as to whether the debtor qualified as a wage earner under Chapter 13.  The evidence showed that the debtor receives approximately $4,500 per month from his father, George W. Taylor, Sr. as compensation for work on market tracking software.  Being a wage earner is an easy test to meet.  There are an abundance of cases that state that the debtor only has to demonstrate that there is a steady stream of income coming in on a regular basis with which they can fund their plan.  In re Reed, 368 F. Supp 615, 617 (D. Va. 1968) (holding that the term "wage earner"is to be liberally construed in favor of the debtor).  Regular employment checks as well as retirement and social security benefits have been found to qualify.  KEITH M. LUNDIN, CHAPTER 13

5

BANKRUPTCY, 3D EDITION § 8.1, at 8-9 (2000 & Supp. 2004).  Here, there is a regular pattern of intrafamily employment of sufficient funds to support this plan, and the plan is currently being funded by those sources.  This basis for denying confirmation is also rejected.  The motion to dismiss is denied and the plan can be confirmed.

**So Ordered.**

**Dated:  July 28, 2005**

J. Rich Leonard
United States Bankruptcy Judge